**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **TERRI WHITE,** | |
| **Plaintiff,** | |
| **v.** | **1:05-cv-2149-WSD** |
| **RELIANCE STANDARD LIFE INSURANCE COMPANY** | |
| **Defendant.** | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff Terri White's ("Plaintiff")

Motion for Summary Judgment (Pl. MSJ [16]) and Defendant Reliance Standard

Life Insurance Company's ("Defendant" or "Reliance") Motion for Summary

Judgment.  (Def. MSJ [18].)

## I.    BACKGROUND

Plaintiff seeks long-term disability benefits under an employee benefit plan

established and maintained by her employer, ITS Corporation ("ITS"), and

governed by the Employee Retirement Income Security Act of 1974 ("ERISA"),

29 U.S.C. §§ 1001 et seq.  Plaintiff worked as a data entry specialist for ITS.  (Pl.

SMF., at ¶ 1.)  ITS contracted with Defendant to provide long term disability

insurance to its employees as part of an overall ERISA welfare benefit plan.[1]  The

parties agree that Defendant's decision on Plaintiff's claim for benefits is subject to

review under the heightened arbitrary and capricious standard.  (Id. at ¶ 4; Def.

Resp. to Pl. SMF, at 4.)

On December 3, 2003, Plaintiff claims that she became unable to work due

to a disability.  In late November 2003, and again on December 2, 2003, Plaintiff

saw William J. Gower, M.D., her internal medicine doctor, with complaints of

dizziness, unsteadiness and double vision.  (Pl. SMF, at ¶ 7.)  An MRI performed

on the Plaintiff appeared normal.  Plaintiff consulted a neurologist, Richard A.

Stappenbeck, M.D.  Stappenbeck diagnosed her with syncope, a condition resulting

in loss of consciousness due to insufficient blood flow to the brain.  On December

23, 2003, Plaintiff returned to Dr. Stappenbeck, complaining of pounding

---

[1]  Under Reliance's policy, "Totally Disabled" and "Total Disability" mean
that as a result of an injury or sickness "during the Elimination Period and for the
first 36 months for which a Monthly Benefit is payable, an Insured cannot perform
the material duties of his/her regular occupation."  (Pl. SMF., at ¶ 3.)  That is, for
the first 90 consecutive days of Total Disability ("the Elimination Period"), a
claimant is required to demonstrate that she is unable to perform the material duties
of her own occupation as a result of an injury or sickness, but benefits are not
payable during the Elimination Period.  (Def. SMF, at ¶ 5.)  For the first 36 months
immediately following the Elimination Period, benefits are payable if the claimant
demonstrates an inability, due to injury or sickness, to perform the material duties
of her occupation.  (Id. at ¶ 6.)

headaches and double vision.  Dr. Stappenbeck noted that Plaintiff had poor coordination in her extremities.

On December 26, 2003, a CT scan of Plaintiff's brain indicated the presence of a lesion.  Notes from the scan state:  "3 x 4 millimeter focus of relative hypodensity is present in the right parietal lobe adjacent to the sylvian fissure possibly representing focal prominence of the sylvian fissure on the right."  (Pl. SMF, at ¶ 12.)  An MRI was conducted, and the results were apparently normal.[2] A subsequent cerebral arteriogram was conducted, and the results were negative. Plaintiff continued to report syncope and balance problems.  Dr. Gower's notes indicate that his neurological examinations and diagnostic tests given to Plaintiff were normal.[3]  (Def. SMF, at ¶ 17.)

_____

[2]  There is some confusion over Dr. Steppenbeck's notes regarding the MRI and CT scan.  Apparently, Dr. Steppenbeck noted that the MRI indicated a lesion on Plaintiff's brain.  The CT scan indicated a lesion.  Dr. Steppenbeck's notes mistakenly refer to the lesion being on the MRI.  (Pl. MSJ, at 3 n.2; Def. Resp. to Pl. SMF, at ¶ 13.).

[3]  There is a dispute between the parties regarding a report filed by Dr. Steppenbeck.  Defendant claims that when Plaintiff's claim was submitted, Dr. Steppenbeck reported Plaintiff was capable of standing, sitting and walking 1-3 hours each in an 8 hour workday, that she was continuously able to bend, squat, reach, kneel, crawl and use foot controls, and that she had no cognitive deficits. (Def. SMF, at ¶ 12.)  Plaintiff, however, claims that the form relied on by Defendants is misleading.  Plaintiff argues that Dr. Steppenbeck probably misread

On March 23, 2004, Plaintiff timely applied for disability benefits and claimed disability due to double vision, migraines, and blackouts. Dr. Steppenbeck completed an Attending Physician's Statement. He listed her diagnoses as rheumatoid arthritis and cerebral vasculitis and her symptoms as syncope, memory loss and weakness. On the employer's portion of the disability application, Plaintiff's task leader at ITS provided a description of Plaintiff's job duties. The task leader stated Plaintiff's job required her to relate to others continuously, communicate verbally and in writing continuously, use math and language skills frequently, and make independent judgments occasionally.[4] (Pl. SMF, at ¶ 18.)

the form, and that it appears he meant to say that Plaintiff was continuously unable to do the above activities. (Pl. Resp. to Def. SMF, at ¶ 12.)

[4] Plaintiff's task manager also noted that Plaintiff must be able to lift 20 to 25 pounds and have the use of both hands. The official job description submitted by ITS states that a person in Plaintiff's position must be a:

> high school graduate or equivalent. . . . Must be able to follow written and verbal instructions. Must be capable of reading, writing, understanding, and speaking common English. Must have interpretation skills and reasoning ability. Must be self-motivated and able to work with little supervision. Shall possess a valid driver's license for operating a motor vehicle.

(Pl. SMF, at ¶ 21.) The official job description also states that a data entry specialist may be required to occasionally lift and/or move up to 40 pounds.

Instead of relying on ITS's description, Defendant used the Dictionary of

Occupational Titles ("DOT") published by the Department of Labor for a

description of Plaintiff's job duties.[5]  Using the DOT analysis, Defendant

concluded that Plaintiff's job was sedentary.

On April 15, 2004, Defendant interviewed Plaintiff and noted that she

performed "small house cleaning, eat, watch TV and rest a lot because she's off

balance."  (Pl. SMF, at ¶ 26.)  Plaintiff informed Defendant that Dr. Steppenbeck

had restricted her from driving.  Dr. Steppenbeck's medical notes during the time

---

Plaintiff claims that the two statements by Plaintiff's employer indicate a light to
medium level occupation rather than sedentary.

[5]  Plaintiff argues it was improper for Defendant to use the DOT rather than
the actual job description provided by her employer.  Defendant argues that it is
permitted to use the DOT description because Plaintiff's policy provides a benefit
for a disability from a claimant's "regular occupation" and not her specific job.
The Court notes that it, and many other courts, have found Defendant's
interpretation of "regular occupation" to be unreasonable in other cases.  See
Shahpazian v. Reliance Std. Life Ins. Co., 388 F. Supp. 2d 1368, 1379 (N.D. Ga.
2005) (finding that Reliance's dependence upon the DOT was unreasonable and
created a risk of unjust results when it relied solely upon occupation descriptions in
the DOT when the descriptions did not reflect certain material duties of Plaintiff's
position and noting that "one must ask whether the DOT descriptions are
practically or legally viable in a dynamic and diverse labor market such as exists in
this urban community or elsewhere").

period noted that she experienced a loss of balance and that Plaintiff's memory and thought processes were not intact.

On August 2, 2004, a nurse reviewed Plaintiff's file at Defendant's request. The nurse noted that around the date of loss, Plaintiff was treated for diplopia (double vision) and intermittent episodes of disequilibrium.  The nurse concluded that the appropriate diagnostic studies were within normal limits, and although Plaintiff was restricted from driving, she could perform sedentary work.  (Id. at ¶ 32.)  On September 15, 2004, Defendant denied Plaintiff's claim for disability benefits, stating that Plaintiff had not submitted satisfactory proof of total disability.  Defendant stated "all your complaints are subjective and there are no objective findings to support your disability."[6]  (Id. at ¶ 38.)

On November 2, 2004, Plaintiff appealed Defendant's decision.  (Id. at ¶ 83.)  She faxed a handwritten appeal and some medical records.  Plaintiff's letter stated:

---

[6]  Plaintiff asserts that there is no objective evidence requirement at this stage of Plaintiff's policy and that the policy pays benefits for 24 months when the claim is based upon "self-reported" conditions.  (Pl. SMF, at ¶ 39-40.)  Defendant denies this and argues that the policy requires a claimant to submit "satisfactory proof of total disability to [Reliance]."  (Def. SMF, at ¶ 39.)

> I am writing concerning my disability case.  I am
> appealing it.  I am still having problems and was told by
> my doctor that I will have problems for the rest of my
> life.  Memory loss, severe headache, blackouts and now I
> loss [sic] my balance.  Thank You, Terri White.

(Id. at ¶ 43.)  Plaintiff included a letter from Dr. Steppenbeck in her appeal:

> I reviewed a recent letter concerning the above patient's
> medical condition.  She was seen on the above date
> [October 25, 2004] and she still complains of memory
> loss, ataxia, frequent falls, and headaches.  Her current
> treatment is with analgesics and anti-seizures medications
> for control of the headaches.  She however has no
> resolution of the problem to the extent she can function
> or work.  I have gone back over her records as to the
> exact and precise diagnosis which is based on an
> abnormal M.R.I. with a central hypodense lesion.  To
> rule out an aneurism an arteriogram was done to rule out
> a blood vessel malformation.  The arteriogram did not
> show an aneurisms [sic] but the central hypodense lesion
> on the M.R.I. is still present and accounts for the
> patient's current complaints.  I have the opinion that the
> condition is permanent since it is based on a brain lesion.

(Id. at ¶ 41.)

On December 15, 2004, Defendant sent Plaintiff's file to Lynne Carmickle,

M.D., a reviewer for United Review Services.  (Id. at ¶ 84.)  Dr. Carmickle was

critical of Dr. Steppenbeck's findings.  She noted Dr. Steppenbeck's mistake in

referring to an abnormal MRI when the MRI results were normal.  She opined that

Dr. Steppenbeck's records were "scanty in terms of clinical detail" and that his examination did not "meet the customary standard of medical practice." (Def. SMF., at ¶ 19.). Dr. Carmickle found no evidence of syncope and found no basis for impairment from Plaintiff's occupation. (Id. at 21-22.) Dr. Carmickle issued her opinion on January 9, 2005. (Pl. SMF, at ¶ 84.) On January 31, 2005, Defendant sent Plaintiff a letter denying her appeal, relying on Dr. Carmickle's report.

Plaintiff subsequently retained an attorney who suggested that she undergo a neuropsychological evaluation to evaluate possible cognitive limitations. On June 14, 2005, Nick A. DeFilippis, Ph.D, a board certified neuropsychologist, reviewed Plaintiff's medical records, interviewed her, and gave her several objective tests.[7] Plaintiff told Dr. DeFilippis that she had trouble with vision, balance, chronic

---

[7] Defendant objects to Plaintiff's reliance on any documents relating to these tests or other documents generated after Plaintiff's appeal was denied. Defendant argues they are not part of the Administrative Record and cannot be considered by the Court. In reviewing Defendant's decision to deny Plaintiff's claim on the merits under the heightened arbitrary and capricious standard of review, the Court primarily is limited to the Administrative Record. These facts are considered to evaluate Plaintiff's "full and fair review" argument. The Court does not consider these facts or documents to evaluate the merits of Defendant's decision to deny Plaintiff's claim.

headaches, dizziness and blackouts.  Dr. DeFilippis performed several cognitive tests, and the results showed severe impairments.

The neuropsychological test showed signs of diminished cognitive ability. Plaintiff's full scale performance IQ was 69.  Her performance on the memory and attention tests suggested a deterioration of about 50 percent of her expected memory ability.  (Pl. SMF, at ¶ 61.)  Her performance on auditory processing for verbal and nonverbal material that requires attention and vigilance were "grossly impaired."  Plaintiff also showed mild visual motor impairments, psychomotor slowing and difficulty with fine motor coordination on her left upper extremity. Plaintiff's word recognition and math skills were ranked at the fourth grade level, and her reading comprehension skills were below fourth grade level.  Dr. DeFilippis concluded that Plaintiff was not malingering, and the possibility of Plaintiff "returning to a productive work situation is limited."  (Id. at ¶ 67.)

On June 27, 2005, Plaintiff, through her attorney, asked Defendant to review her case in light of the new medical information and evaluations she had obtained. Plaintiff attached a questionnaire completed by Dr. Steppenbeck which stated that Plaintiff could not perform sedentary work.  Plaintiff also attached her medical records and the neuropsychological evaluation performed by Dr. DeFilippis.  She

included MRIs of her brain and cervical spine, conducted on January 21, 2005, which were performed during the claims period, but apparently not previously sent to Defendant.  The MRIs indicated a possibility of demyelinating disease.[8]  On July 19, 2005, Plaintiff's attorney sent additional records from Dr. Steppenbeck to Defendant.  (Id. at ¶ 74.)

On August 8, 2005, Reliance denied Plaintiff's request for a further review, stating:

> We have received your request for another appeal of the denial of the above claim.  Unfortunately, our internal guidelines . . . only provides [sic] for one appeal, and according to our records, this appeal has already been provided.  As a result, our previous determination is final.  We are therefore returning your request(s) for another appeal . . . as the claims file is now closed.

(Id. at ¶ 75.)

On August 17, 2005, Plaintiff filed this action.  In her Complaint, she asserts one count for entitlement to long term disability benefits and one count of breach of fiduciary duty under ERISA.  (Compl. [1], at ¶ 32.)  On August 30, 2005,

---

[8] "A demyelinating disease is any condition that results in damage to the protective covering (myelin sheath) that surrounds nerves in [the] brain and spinal cord.  Multiple sclerosis (MS) is the most common type of demyelinating disease." See http://www.mayoclinic.com/health/demyelinating-disease/AN00564.

Plaintiff was examined by Patricia Belmer, M.D. at the Emory Clinic, who suspected multiple sclerosis ("MS") was the cause of Plaintiff's symptoms.  (Id. at ¶ 77.)  Plaintiff is now being treated for MS, and Plaintiff's current neurologist believes that she was suffering from MS since the date of the onset of her disability.

On October 14, 2005, Defendant filed its Answer to Plaintiff's Complaint. (Answer [3].)  On March 31, 2006, Plaintiff filed her Motion for Summary Judgment, asking the Court to remand the case for a full and fair review of her claim for benefits.[9]  On April 3, 2006, Defendant filed its Motion for Summary Judgment.  Defendant argues that under the heightened arbitrary and capricious standard of review, its benefits determination was correct and reasonable, and that summary judgment should be granted in its favor.

---

[9]  In her motion for summary judgment, Plaintiff does not actually ask the Court for a determination on the merits of her claim for benefits.  Instead, she argues, among other things, that she did not receive a full and fair review as required by ERISA.  She asks the Court to remand her case to Defendant for a full determination of her claim, taking into account all relevant evidence.  (Pl. MSJ, at 13.)

**II.     DISCUSSION**

    A.     <u>Summary Judgment Standard</u>

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  <u>Graham v. State Farm Mut. Ins. Co.</u>, 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  <u>Id.</u>

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  <u>United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.</u>, 894 F.2d 1555, 1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence,

and the drawing of inferences from the facts are the function of the jury . . . ."
Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must
not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d
at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of
fact to find for the non-moving party," summary judgment for the moving party is
proper.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587
(1986).

B.    Plaintiff's Motion for Summary Judgment

Plaintiff argues that Defendant did not provide her with a full and fair review
of her disability claim as required by ERISA and requests a remand to Defendant
for the full review to which she is entitled.  (Pl. MSJ, at 1.)  Plaintiff argues that
because Defendant did not allow her to respond to the evidence it relied upon in
denying her claims decision, namely Dr. Carmickle's report, she was denied a "full
and fair review."  Plaintiff asks the Court to remand her case to Defendant and
require Defendant to have all of Plaintiff's evidence reviewed.  (Id. at 13.)
Defendant argues that Plaintiff received a "full and fair review," and Plaintiff's
motion for summary judgment should be denied.  (Def. Resp. to Pl. MSJ [20], at
1.)

Under 29 U.S.C. § 1133, an employee benefit plan governed by ERISA must:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.  According to regulations established by the Department of Labor, a full and fair review includes the right to review "all documents, records, and other information relevant to the claimant's claim for benefits," and the right to an appeal that takes into account "all comments, documents, records, and other information submitted by the claimant relating to the claim."  29 C.F.R. § 2560.503-1(h)(2)(iii), (iv).  The issue here is whether Defendant's failure to provide Plaintiff the opportunity to respond to Dr. Carmickle's medical evaluation conducted after Plaintiff submitted her appeal was improper.  The Court finds that it was.

Both parties acknowledge that the Eleventh Circuit has not expressly ruled on this issue.  The Eight Circuit, however, has addressed it and provides a sound analytical approach.  In <u>Abram v. Cargill, Inc.</u>, 395 F.3d 882 (8th Cir. 2005), the plaintiff was diagnosed with PPS, a progressive illness found in polio survivors, which commonly causes fatigue, weakness, and pain.  Despite job modifications, Abram's symptoms worsened, and she applied for long-term disability benefits on July 26, 2000.  <u>Id.</u> at 883-84.  Abram submitted medical records, including the examination notes of her treating physician.  Abram's physician noted that, in addition to her PPS, she was also overweight and deconditioned.  An evaluating nurse for the Plan reviewed Abram's medical records and concluded that there was insufficient objective medical evidence to support Abram's claim of permanent and total disability "from a 20 hour workweek, sedentary job."  <u>Id.</u> at 884.

Based on this evaluation, the Plan sent Abram to Dr. Gedan, an independent medical examiner.  The Plan instructed Dr. Gedan to limit his opinion to Abram's PPS.  Dr. Gedan concluded that Abram was able to perform sedentary or light duty work that involved sitting at a desk or computer terminal, and he recommended a functional capacity evaluation.  His report concluded that obesity and depression, and not PPS, were causing Abram's fatigue and pain.

-15-

After reviewing this report, Abram's treating physician disputed Gedan's conclusion and opined that Abram was not capable of sedentary work. Abram's physician did not indicate whether her disability was a result of PPS, obesity, or a combination of the two, and the Plan did not request any clarification. Without taking any further submissions, the Plan denied Abram's claim and concluded that she was able to perform a sedentary job. Id. at 884-85.

On May 9, 2001, Abram appealed. She submitted a functional capacity evaluation, which concluded that Abram could not consistently work more than twenty hours a week. Abram also submitted a letter from her employer clarifying that her job was a forty-hour per week position. The Plan appeals committee reviewed this material and concluded that Abram could not work in a full-time position. The committee, however, did not reach a final decision. On July 8, 2001, the appeals deadline lapsed without any decision or notice of extension by the committee. The committee met again on July 23, 2001 and reviewed the reports submitted by Abram's treating physician and the functional capacity exam. They sent the new material to Dr. Gedan, the independent medical examiner, for review. Id. at 885.

On July 30, 2001, Dr. Gedan sent an opinion letter to the Plan.  He concluded that there was no reasonable medical explanation why Abram could not work 8 hours per day.  On the basis of Dr. Gedan's report, the Plan denied Abram's claim on August 6, 2001, almost a month after its decision was due.  The Plan provided a copy of Dr. Gedan's report to Abram with the denial letter.  The Eighth Circuit held that Abram was denied a full and fair review under ERISA.  It concluded that the Plan should have permitted Abram to respond to Dr. Gedan's second report and remanded the case for further consideration by the Plan.[10]  Id. at 885.

In reaching its decision, the Abram court explained that ERISA's full and fair review requirements "allow a claimant to adequately prepare herself for any further administrative review, as well as an appeal to the federal courts.  The statute and the regulations were intended to help claimants process their claims efficiently and fairly."  Id. at 886 (quotations and citations omitted).  The Court stated that the requirements of a full and fair review include "knowing what evidence the decision-maker relied upon, having an opportunity to address the

_____

[10]  The Abram court also found that an alternative reason for remand was that Dr. Gedan did not consider Abram's obesity in making his decision.  Id. at 886.

accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." Id. (citations omitted).  Because "ERISA and its accompanying regulations essentially call for a meaningful dialogue between the plan administrators and their beneficiaries," "[p]lan procedures cannot be 'full and fair' without providing for this communication." Id. at 886 (citing Marolt v. Alliant Techsystems, Inc., 146 F.3d 617, 620 (8th Cir. 1998), for the proposition that ERISA claimants are "entitled to timely and specific explanation of benefit denials, and may not be 'sandbagged' by post-hoc justifications of plan decisions").

The Abram court noted that Abram was not provided access to Dr. Gedan's second report until after the Plan's decision.  It explained that "[w]ithout knowing what inconsistencies the plan was attempting to resolve or having access to the report the Plan relied on, Abram could not meaningfully participate in the appeals process." Id.  The court stated that the Plan's solicitation of a second report after the deadline for an appeals decision had passed and its action to send the report to Abram only after the Plan issued its final denial decision was the kind of "gamesmanship [that] is inconsistent with full and fair review." Id. (quotations and citations omitted).  The Court concluded that "[t]here can hardly be a meaningful

dialogue between the claimant and the Plan administrators if evidence is revealed only after a final decision. A claimant is caught off guard when new information used by the appeals committee emerges only with the final denial. Abram should have been permitted to review and respond to the report by Dr. Gedan." Id.

In Harris v. Aetna Life Ins. Co., 379 F. Supp. 2d 1366 (N.D. Ga. 2005) (Martin, J.), a court in this district adopted the Eighth Circuit's reasoning in Abram under facts almost identical to Plaintiff's. In Harris, the plaintiff was diagnosed with HIV and major depression, applied for long term disability benefits, and was awarded benefits effective August 26, 2002. The provider, Aetna, informed Harris that he should continue to update it with any new information regarding his condition. On January 31, 2003, Harris provided Aetna with an updated statement from his psychiatrist, which stated that the prognosis for plaintiff to return to his own occupation was "poor." The plaintiff also submitted a claim questionnaire, indicating his inability to work due to symptoms from HIV. After Harris submitted the questionnaire, Aetna began investigating the claim because it believed Harris had changed his claimed basis for disability. Harris, 379 F. Supp. 2d at 1368-69.

Aetna's occupational specialist reviewed Harris's claim file. On July 16, 2003, Aetna terminated Harris's disability benefits due to "lack of objective

medical evidence" in support of his claim for disability benefits. <u>Id.</u> at 1369. On December 15, 2003, Harris appealed the termination of his benefits and submitted various affidavits and letters from his doctors and from him.

On March 22, 2004, Aetna issued a final denial of Harris's claim for disability benefits. In its denial letter, Aetna cited the reviews of two medical examiners–an occupational specialist and a psychiatrist–who had been asked to review Harris's claim on appeal. Each examiner submitted a report summarizing his findings, but Aetna did not provide the two reports to Harris before it issued its final denial of Harris's claim for disability benefits. Harris sued, arguing that Aetna denied him a full and fair review of his claim and urging the court to adopt the reasoning of the Eighth Circuit in <u>Abram</u>. Aetna argued that it was merely complying with the mandates set forth in 29 C.F.R. § 2560.503-1(h)(3)(iii) and (v). It claimed it would be inefficient to provide the two reports and permit Harris to respond to them. <u>Id.</u> at 1372-73.

The <u>Harris</u> court recognized that "[a]lthough the Eleventh Circuit . . . has stated that *post hoc* explanations for benefits denials are generally without merit, the court has not expressly ruled on whether Defendant's specific action–failing to provide Plaintiff the opportunity to respond to evidence acquired after he submitted

his appeal–is improper."  Id. at 1372 (citing Marecek v. BellSouth Telecomms., Inc., 49 F.3d 702, 706 (11th Cir. 1995)) (quotations omitted).  The court concluded it was.

The Harris court noted that "[t]he persistent core requirements of full and fair review include knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision."  Id. at 1371 (citing Grossmuller v. Int'l Union, 715 F.2d 853, 858 n.5 (3rd Cir. 1983)).  "The procedures set forth in ERISA and its related regulations were intended to help claimants process their claims efficiently and fairly and provide a claimant the opportunity to adequately prepare himself for any further administrative review, as well as an appeal to the federal courts."  Id. at 1371-72 (citing Richardson v. Cent. States, S.E. & S.W. Areas Pension Fund, 645 F.2d 660, 665 (8th Cir. 1981)) (quotations omitted).

The court reasoned that "[w]hile this court certainly shares Defendant's desire to avoid an interminable review process, . . . in this case, all Defendant would have to do to satisfy the regulatory requirements is to give Plaintiff an opportunity to respond to the reports of [the two examiners]."  Id. at 1373.  The

Court noted:  "Abram and this case are factually similar in all material ways

because, in both cases, the observations of medical examiners, which were

submitted after the claimants' opportunities to present evidence on appeal had

closed, were integral in the defendants' decisions to deny benefits.  This court, like

the Abram court, is mindful of its duty to maintain 'meaningful dialogue' between

Plaintiff and Defendant and believes that Defendant's failure to provide Plaintiff an

opportunity to respond to the reports . . . prevented the necessary exchange of

information required for a full and fair review."  Id. at 1373-74.  The court denied

Aetna's motion for summary judgment and remanded the plaintiff's case to Aetna.

It held that "Plaintiff should be provided an opportunity to file any additional

evidence that responds to or rebuts the contents of the examiners' reports before

Defendant's further consideration of Plaintiff's claim for long-term disability

benefits."  Id. at 1374.

        The facts of this case are in all material ways indistinguishable from Abram

and Harris.  Reliance denied Plaintiff's benefits on September 15, 2004.  On

November 2, 2004, Plaintiff appealed.  Reliance referred Plaintiff's file to Dr.

Carmickle for a review on December 15, 2004.  On January 9, 2005, Dr. Carmickle

issued her opinion.  On January 31, 2005, Reliance issued a final denial to

Plaintiff, relying on Dr. Carmickle's report.  On June 27, 2005, Plaintiff, through her attorney, asked Defendant to review her case again and attached new, significant information regarding Plaintiff's neuropsychological evaluation, medical records and doctor's evaluations.  On August 8, 2005, Defendant denied Plaintiff's request and returned her records, thereby preventing Plaintiff from responding to Dr. Carmickle's report.

Like in Abram and Harris, the observations of Defendant's medical examiner, Dr. Carmickle, were submitted after Plaintiff's opportunity to present evidence on appeal had closed and appear to have been integral in Defendant's decision to deny benefits.  The Court finds that Defendant's failure to provide Plaintiff an opportunity to respond to Dr. Carmickle's report is inconsistent with the goal of "meaningful dialogue" between the parties and hampered the necessary exchange of information required for a full and fair review.  This is particularly true because Plaintiff's neuropsychological evaluation, which she mailed to Defendant, showed significant cognitive and motor disabilities in multiple categories, and Plaintiff was later diagnosed with MS, a condition which likely explains the symptoms she suffered from the onset of her medical condition.  This information was relevant and important to a correct benefits determination of

Plaintiff's claim.  Although Defendant received this information, it refused to consider it and returned it to Plaintiff.  The Court finds that Defendant did not provide Plaintiff with a full and fair review.  This matter is required to be remanded to Defendant for a full review of the relevant evidence, especially that which responds to Dr. Carmickle's report.

Defendant argues that Plaintiff received a full and fair review of her benefit claim, and Defendant is not obligated to accept any further evidence from Plaintiff. (Def. Resp. to Pl. MSJ, at 7.)  Defendant claims there is no basis to remand Plaintiff's claim because Defendant's denial was not arbitrary and capricious. Defendant does not and cannot distinguish Abram and Harris from this case, and the authorities on which it relies do not support its argument that remand is not permitted in this instance.

Defendant argues, relying on Shannon v. Jack Eckerd Corp., 113 F.3d 208 (11th Cir. 1997), and Levinson v. Reliance Standard. Life Ins. Co., 245 F.3d 1321 (11th Cir. 2001), that Plaintiff's case cannot be remanded because its denial was not arbitrary and capricious.  Neither of these cases involve the issue of a full and fair review under ERISA, and neither supports Defendant's argument.

In Shannon, the district court found after a bench trial that because the defendant plan administrator did not consider all relevant evidence in determining Plaintiff's claim, its denial of benefits to the plaintiff was arbitrary and capricious. The district court remanded the matter to the plan administrator for a new determination based upon all relevant evidence, including subsequently available evidence.  Shannon, 113 F.3d at 210.  On appeal, the Eleventh Circuit upheld the district court's determination.  The court noted:

> The district court . . . [held] that since a defendant's duty to provide benefits is a continuing one, its refusal to provide benefits is thus a continuing denial, the propriety of which is measured against the information available from time to time. [The plan] administrator had an obligation to make a reasonably relevant inquiry and failed to do so at the time of the original determination. The district court did not err in directing that the Plan administrator consider all available evidence.  As we stated in Jett, "should the beneficiary wish to present additional information that might affect the determination of eligibility for benefits, the proper course would be to remand to the plan administrator for a new determination.

Id. (citing Bucci v. Blue Cross-Blue Shield of Conn., 764 F. Supp. 728, 732 (D. Conn. 1991) and Jett v. Blue Cross & Blue Shield, Inc., 890 F.2d 1137, 1140 (11th Cir. 1989)).  The issue of a full and fair review was not raised, and the Court did not discuss it.

-25-

In <u>Levinson</u>, the district court found that a plan administrator's denial of the plaintiff's request for benefits was arbitrary and capricious and granted summary judgment in favor of the plaintiff.  <u>Levinson</u>, 245 F.3d at 1324.  On appeal, the plan administrator argued that the case should be remanded to the administrator for reconsideration.  <u>Id.</u> at 1327.  The Eleventh Circuit upheld the district court's determination that the denial was arbitrary and capricious.  It also denied the defendant's request for remand, stating that "[the defendant] had more than adequate opportunities to establish an administrative record containing evidence contradicting [the plaintiff's] evidence pointing to disability on two occasions: when it first considered [the plaintiff's] claim and upon [the plaintiff's] administrative appeal.  [The defendant] did not do this."[11]  <u>Id.</u> at 1328.  The court noted that it was not until after litigation commenced that the defendant obtained contradictory evidence, "[t]herefore, the district court's refusal to remand the issue . . . to [the plan administrator] should be upheld."  <u>Id.</u>

Shannon and <u>Levinson</u> are inapplicable to the case currently before the Court, and they do not stand for Defendant's proposition that a case may only be

---

[11]  Unlike the defendant in <u>Levinson</u>, Plaintiff had no opportunity to respond to Defendant's medical reviewer and thus create a complete administrative record, since she did not see the report until after the final decision was made.

remanded after an arbitrary and capricious determination.  Neither case dealt with the issue of what constitutes a full and fair review under ERISA.  In both cases, the district court made a determination on the merits that the plan administrator's decision was arbitrary and capricious, and the plaintiffs did not argue that they were denied a "full and fair review."  Interestingly, implicit in both of these opinions is the recognition that the claims determination process requires a complete record for fair decisions to be rendered.

Defendant also unsuccessfully attempts to distinguish <u>Abram</u>.  Defendant argues that <u>Abram</u> does not apply because the medical report in that case was prepared *after* the deadline for the appeal decision, and the plan's failure to make adequate findings also supported the remand.  (Def. Resp. to Pl. MSJ, at 14.) Defendant's arguments are unconvincing.  The <u>Abram</u> court noted unequivocally that "[t]here can hardly be a meaningful dialogue between the claimant and the Plan administrators if evidence is revealed only after a final decision. . . . [The plaintiff] should have been permitted to review and respond to the report by Dr. Gedan."  <u>Abram</u>, 395 F.3d at 886.[12]

_____

[12] Although the <u>Abram</u> Court found "an alternative reason to remand," this finding does not erode its interpretation of what a "full and fair review" requires. <u>See</u> <u>Abram</u>, 395 F.3d at 886.

Defendant acknowledges Harris, but does not distinguish it or otherwise argue that it does not apply here.  (Def. Resp. to Pl. MSJ, at 14.)  Harris is directly on point.  Defendant recognizes that the Eleventh Circuit and other circuits have not expressly adopted the reasoning in Abram, but it does not offer authority rejecting it or demonstrate why Abram's reasoning is not sound and consistent with the purposes and prescriptions of ERISA.  The Court finds the Eighth Circuit's reasoning in Abram, and Judge Martin's application of it in Harris, persuasive.

Here, Plaintiff was not permitted to respond to Dr. Carmickle's report, and as a result, she did not receive a full and fair review under ERISA.  Plaintiff's case should be remanded to Defendant, and Plaintiff given an opportunity to file any additional evidence that responds to or rebuts Dr. Carmickle's report so it may be considered in making a benefits determination in this case.

C.    Defendant's Motion for Summary Judgment

Defendant has filed a motion for summary judgment on the merits of its benefits decision.  It argues that under the applicable heightened arbitrary and capricious standard of review, its decision to deny Plaintiff benefits was not wrong and was reasonable.  Because the Court finds that Plaintiff did not receive a full

and fair review under the requirements of ERISA and remands the case back to Defendant, its motion for summary judgment is inappropriate.  Defendant's Motion for Summary Judgment is denied.

## III.   CONCLUSION

Accordingly,

Plaintiff's Motion for Summary Judgment [16] is **GRANTED**.  This case is **REMANDED** to Defendant in order to allow Plaintiff to respond to Defendant's evidence relied upon in denying Plaintiff's claim for benefits.

Defendant's Motion for Summary Judgment [18] is **DENIED**.


**SO ORDERED** this 22nd day of January, 2007.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE